ALLEGHENY COUNTY HOUSING AU-
THORITY, for Use of DOBSON v. CARIS-
TO CONST. CORPORATION et al.
Civ. A. No. 5807.

United States District Court
W. D. Pennsylvania.
June 19, 1950.

Edward A. Tobias, Pittsburgh, Pa., for plaintiff.

Milton W. Lamproplos, Smith, Buchanan & Ingersoll, Pittsburgh, Pa., for defendants.

McVICAR, Chief Judge.

This action is before us on defendants' motion to set aside verdict and judgment and in the alternative, motion for new trial.

On November 25, 1942, the defendant, Caristo Construction Corporation, entered into a contract with the United States of America whereby Caristo, as contractor, agreed to construct a War Housing Project in Moon Township, Pennsylvania. Subsequently, Caristo and the plaintiff, E. H. Dobson, entered into a written sub-contract in connection with this project. The sub-contract included off-site water lines and sewers, water storage tank, pumping station and a sewage disposal plant.

The price agreed upon between Dobson and Caristo was $63,000.00 "subject to additions and deductions for changes as may be agreed upon". Dobson, in his contract with Caristo, agreed "to be bound to the contractor by the terms of the General Conditions and Contract Documents entered into by and between the General Contractor and the Allegheny County Housing Authority, representative of the Federal Public Housing Authority."[1] One of the terms of the prime contract between the Government and Caristo provided for a system of "equitable adjustment" of disputes in regard to changes in the contract.[2]

After the contract between Dobson and Caristo had been executed but before any work had been commenced upon the off-site sewer and sewage disposal plant, the Government ordered a change in its location. Before work had commenced on this second location, a third location for the off-site sewer and sewage disposal plant was decided upon by the Government. Accordingly, plans were sent to the plaintiff and work was commenced upon this phase of the construction contract. However, before its completion, the sewage disposal

plant was cancelled by the Government and work was stopped. Plaintiff claims that a modification of price in the amount of $6,-189.00 resulted from this change of location.[3] A credit was due the Government, i. e. a reduction in the original contract price; by reason of the work not done and materials not furnished in connection with this disposal plant; the plaintiff asserting a credit of $4,510.17 and the defendant, $8,000.00. Plaintiff also claims $1,091.21 as a result of an extension of this sewer line to the Ohio River and restoration of the sewage disposal plant site.

In addition to the above items, plaintiff has claimed various amounts of compensation for certain extras in connection with the contract and for repairing a road used by the defendant.

The defendant admits an amount of $5,-094.09 to be due the plaintiff, but has denied liability as to the balance of the plaintiff's claim of $14,702.41. The case was submitted to the jury, who returned a general verdict for the plaintiff in the amount of $14,094.91, and judgment was duly entered. Defendant has moved to set aside the verdict and judgment, and to enter judgment in the amount of $5,094.09, or, in the alternative, seeks a new trial.

In view of the number and variety of the plaintiff's claims, the case can be discussed more satisfactorily by treating each item of plaintiff's claims separately.

Sewage Disposal Plant and Off-Site Sewer.

Plaintiff claims that the contract of November 25, 1942 with Caristo was subsequently changed by an express modification entered into by Dobson and the defendant's agent as a result of the relocation of the sewage disposal plant. Plaintiff asserts in his complaint that the amount of this adjustment was $6,189.00.

---

1. Sec. 5 DOBSOR-Caristo contract.

2. "Article 15. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the de-

partment concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

3. Paragraph 12 of plaintiff's complaint.

■ There is no question that a modification of a written contract can be effected either by a subsequent writing or a parol agreement. Encyclopaedia Britannica, Inc., v. Cowan, 142 Pa.Super. 534, 16 A.2d 433. Such a change can be created even though the original contract expressly provides that changes must be made in writing. Encyclopaedia Britannica, Inc., v. Cowan, supra.

■ Here, however, the plaintiff has asserted an express modification of a contract: in other words, a new contract was entered into, complete in all its elements. The price of this new contract as asserted by the plaintiff is $6,189.00; yet viewing all of the record most favorably to the plaintiff there is no evidence of any agreement as to price. At best, plaintiff's evidence points only to the costs, which he sustained, or the value of the changes ordered. Price is an indispensable element of an express contract and without an acceptance on the part of the defendant, no contract can result. See Witten v. Stout, 284 Pa. 410, 131 A. 360; Cramer v. McKinney, 355 Pa. 202, 49 A.2d 374; Bemis v. Van Pelt, 139 Pa.Super. 282, 11 A.2d 499. Unless plaintiff's cause is based upon a pure quantum meruit a failure to show a price agreed upon is fatally defective. Witten v. Stout, supra; Farren v. McNulty, 277 Pa. 279, 121 A. 501.

■ In the case at issue, plaintiff has in his pleadings and throughout the trial, asserted an express modification. A careful review of the evidence, however, as pointed out above, has failed to substantiate this position. Accordingly, this particular portion of plaintiff's claim should not have been submitted to the jury; as under the law and the evidence, plaintiff is not entitled to recover.

## Credit Due the Defendant as a Result of the Cancellation of the Sewage Disposal Plant.

After the Government cancelled the proposed sewage disposal plant, a credit became due the defendant from the original subcontract price. The amount to be deducted from the original subcontract could not be agreed upon, resulting in several conferences between representatives of the defendant, the Government and the plaintiff. In May of 1944 at a meeting held in New York in the office of the Regional Director of the Federal Housing Authority, plaintiff set forth his claim as to the amount of credit due, about $3,500.00. The Government at first indicated that it desired a credit of $12,000.00, but upon further examination reduced this amount to $8,500.00. The plaintiff would not agree to this, so the Government contracting officer, by way of compromise, added the $8,500.00 amount to the $3,500.00 asserted by the plaintiff, divided by two and determined the credit to be $6,000.00. Plaintiff has testified that this final figure was not agreed to by him; and there is some indication by the defendant's witnesses at this meeting that he did object to this mode of settlement. Change Order No. 77 was issued in the amount of $6,000.00 and the defendant asserts that Dobson is bound by this Change Order by reason of the provisions of the Contract Documents.[4] No written appeal

4. "Article 3. *Changes.* The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered; *Provided, however,* That the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the head of the department or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as pro-

was taken by Dobson from this decision. According to Dobson, the first notice that he had of the existence of this Change Order No. 77 was about a year later. The thirty day period [5] obviously had elapsed.

██ It would seem that generally where provisions are made in a contract for an "equitable adjustment" of the contract terms, those provisions are binding on all parties. U. S. v. Moorman, 338 U.S. 457, 70 S.Ct. 288; United States v. Callahan Walker Const. Company, 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49; United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L. Ed. 1039. This power of adjustment extends however only as to questions of fact, United States v. Moorman, supra. Here, assuming that the somewhat capricious method employed by the Government contracting officer does come within the scope of an "equitable adjustment", it would seem that failure to notify the plaintiff of the existence of this Change Order, in view of his failure to acquiesce in the settlement, thus eliminating his rights of appeal under the contract, would estop Caristo, the defendant, from asserting the so-called equitable adjustment. The relationship of Caristo to Dobson in so far as dealings with the Government were concerned were somewhat analogous to that of trustee and *ceste que trust*, since the terms of the contract precluded any direct relationship between Dobson and the Housing Authority, and all of Dobson's dealings had to be performed through Caristo. It would seem to follow then that Caristo, the defendant, was under a duty to keep the plaintiff advised as to matters concerning his phase of the construction project. In this case, the defendant was aware of the plaintiff's objections to the terms embodied in the Change Order, yet no notice was given Dobson as to its existence until well after the expiration of the thirty day appeal period. It is a well settled principle of law that one cannot profit from his own

wrong doing, and to permit Caristo to assert at this late date Change Order No. 77 as being binding on the plaintiff, could not help but fall within the prohibition outlined above. It, therefore, follows that the only question in connection with this disputed credit due the Government was whether or not plaintiff did agree to the compromise reached in New York in May, 1944. This question was submitted to the jury and was decided in favor of the plaintiff.

Other Disputed Claims.

██ The remaining disputed claims arising out of this subcontract consist of the repairing of a road by plaintiff which had been used by defendant's agents, changed supports for water tanks, new gas meter building and other extras. These several claims can be treated together since they all consist of work performed beyond the scope of the original contract and have all been pleaded as quantum meruit claims, reasonable compensation being sought therefor. Sufficient evidence was introduced during the trial to sustain this position. The plaintiff was directed to perform these additional jobs; he did perform and is entitled to reasonable compensation. The determination as to what is reasonable compensation is a question of fact and was properly submitted to the jury.

An order will, therefore, be prepared dismissing defendant's motion to set aside the verdict and judgment and enter judgment for the plaintiff in the sum of $5,094.09. In view of the fact that the portion of plaintiff's claim relating to the sewage disposal plant was improperly submitted to the jury, defendant's motion for a new trial will be granted unless the plaintiff voluntarily remits the sum of $6,189.00 from the verdict received. If said remission is made within ten days after the filing of this Opinion, the motion for a new trial will be dismissed.

vided in article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed."

5. Article 15, supra.