526 A.2d 422

Julia HIRSCH, Martin Hirsch and William Langfelder,
t/d/b/a JMW Partnership, Appellants,

v.

MOUNT CARMEL DISTRICT INDUSTRIAL FUND, INC.

v.

Gerald MALINOWSKI.

Superior Court of Pennsylvania.

Submitted Jan. 26, 1987.

Filed May 26, 1987.

Leroy G. Adams, Pottsville, for appellants.

Robert B. Hoffman, Harrisburg, for Mount Carmel, appellee.

Gerald Malinowski, Mount Carmel, for Malinowski, appellee.

Before BECK, KELLY, and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order below granting appellee's motion for summary judgment. Appellants contend that the lower court erred in holding that a release provision in a second contract between the parties barred appellants from recovering against appellee for appellee's negligent performance of its obligations under a prior agreement between the parties. We agree and, accordingly, reverse the order below and remand the case for trial.

The pertinent facts, summarized by the court below, are as follows:

[Appellants] filed a Complaint against [appellee] on 6 March 1985. The central allegation of the Complaint was that [appellee] failed to complete financing arrangements through Pennsylvania Industrial Development Authority (PIDA) in an expeditious manner and that a prior agreement between the parties would have resulted in [appellants'] eventual enjoyment of the benefits of this financing.... The Complaint alleged ... damages to [appellants] in interest and legal fees which were paid as the result of the delay. On 15 April 1985, the [appellee] filed an Answer ... alleg[ing] [that] a contractual release ... [insulated appellee] from liability....

Lower Court Opinion at 1–2. Appellee later filed a motion for summary judgment, based upon the contractual release. The lower court granted the motion and entered judgment in favor of appellee. This appeal followed.

Appellants contend that the lower court erred in holding, as a matter of law, that the release provision bars them from recovering from appellee in tort for appellee's negligent performance of its duties under the previous agreement. We agree.

■ The court based its holding upon this Court's opinion in *Raab v. Keystone Ins. Co.*, 271 Pa.Superior Ct. 185, 412 A.2d 638 (1979), *appeal dismissed*, 496 Pa. 414, 437 A.2d 941 (1981). In *Raab*, Judge Lipez noted that

> Generally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in [contract] and not in [tort].... However, there are circumstances out of which a breach of contract may give rise to an actionable tort.... The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance).

*Id.*, 271 Pa.Superior Ct. at 187–88, 412 A.2d at 639 (citations omitted). *See also Behrend v. Bell Tel. Co.*, 53 D. & C.2d 421, 426–27 (C.P. Allegheny 1971).[1] Under *Raab*, then, a suit between parties to a contract based on negligent breach of contract may be brought in tort only when the plaintiff alleges *improper* performance of a contract rather than *nonperformance*.[2]

---

**1.** *Raab* and *Behrend* are the only Pennsylvania cases that have directly addressed this issue. *Raab* was decided by a three-judge panel consisting of Judges Price, Spaeth, and Lipez. The language quoted in the text was written by Judge Gelfand in the court below, and was adopted by Judge Lipez in the lead opinion for the Superior Court. Judge Price filed a concurring statement and Judge Spaeth dissented. Thus, technically, *Raab* appears not to have precedential value.

**2.** We note that there is a split among authorities regarding whether the historical distinction between misfeasance and nonfeasance re-

Here, the basis for the lower court's granting summary judgment was a release provision that was contained in an installment sales agreement executed by the parties two years after their original agreement. The release provides in pertinent part:

## SECTION 12.   INDEMNIFICATION OF SELLER AND WAIVER OF CLAIMS.

Except when such costs or liabilities are [due] to negligence or willful misconduct of [appellee], [appellants] shall protect, exonerate, defend, indemnify and save [appellee] harmless from and against any and all costs or

tains vitality.   For example, the caveat to § 323 of the Restatement (Second) of Torts provides that:

The Institute expresses no opinion as to whether:

(1) the making of a contract, or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section....

Restatement (Second) of Torts § 323 caveat (1965).   The comment on this caveat then notes that:

This distinction [between misfeasance and nonfeasance] has persisted to the present day, largely in cases involving questions of pleading....

\*       \*       \*       \*       \*       \*

There is no essential reason why the breach of a promise which has induced reliance and so caused harm should not be actionable in tort.   This is true particularly where the harm is physical harm, to the person, land, or chattels of the plaintiff.   The technicalities to which the courts have resorted in finding some commencement of performance indicate a development of the law toward such liability....

*Id.* § 323 comment d.

Professors Keeton and Prosser, however, note that:

Much scorn has been poured on the distinction [between misfeasance and nonfeasance], but it does draw a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort.

W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts § 92, at 660 (5th ed. 1984).

In the instant case, we hold that appellants properly stated a cause of action in tort based upon appellee's improper performance of its contractual obligations.   *See infra.*   Because we hold that appellants have properly stated a cause of action under the more restrictive view reflected in *Raab,* we need not determine, and we express no opinion on, whether an allegation of *nonperformance* of a contract is also actionable in tort.

liabilities which may arise or have arisen out of [appellee's] ... execution and delivery of this Agreement, the Bank Notes, the PIDA Note, the Bank and PIDA Mortgages, or Loan Agreements, if any....

Installment Sales Agreement, August 29, 1984 at § 12. The lower court held, as a matter of law, that this release "expressly bars" appellants from recovering against appellee based on a breach of contract theory. Lower Court Opinion at 3. Applying *Raab,* the court then reviewed the complaint and concluded that because it charged appellee with "nonfeasance" rather than "misfeasance," it set forth only a contractual claim and not a tort claim. *Id.* Because the release "directly addresses the very nonfeasance" that the court concluded was the basis of appellants' complaint, the court entered judgment in favor of appellee. *Id.* at 3–5.

■ A review of the record convinces us that the lower court erred in concluding that the basis of appellants' complaint was an allegation of nonperformance rather than improper performance. Under the first agreement between the parties, appellee had a duty to "in good faith, make every effort to obtain these loans and produce these funds" that would enable appellants to have an addition made to their manufacturing plant. Agreement, May, 1982, at 6, § 13. It is undisputed that appellee eventually did perform this duty, and that, in August, 1984, appellants did receive the financing contemplated in the May, 1982 agreement. *See* Complaint ¶¶ 13, 18–20; Answer [of Appellee] ¶ 13; Counterclaim ¶¶ 3–4; Brief for Appellants at 5; Brief of Appellee at 3. Instead, the gravamen of appellants' complaint, and the point of contention between the parties, is the allegation that appellee performed its duty in a dilatory fashion. Thus, in their complaint, appellants alleged that:

(13) [Appellee] ... failed to cause the Pennsylvania Industrial Development Authority [PIDA] portion of the financing to close as contemplated, and said financing did not close until August of 1984.

\*    \*    \*    \*    \*    \*

(18) The failure of the [PIDA] portion of the financing to close promptly as contemplated in July of 1982, was the sole result of the failure of the [appellee] ... to expeditiously and in good faith, handle the transaction, thereby breaching its duties to the [appellants], both at law, and pursuant to the Agreement dated May of 1982.

(19) Said [appellee's] negligence consisted of inattention to detail, including, but not limited to: refusal to cooperate with [PIDA] in its reasonable requests for information and documentation; in its refusal to complete and furnish documents necessary for the [PIDA] financing; in its failure to respond to correspondence and telephone communications from [PIDA]; in its failure to advise [appellants] of items which may have been reasonably required by [PIDA]; in its failure to exercise good faith in doing everything possible to comply with its obligations under the Agreement; and in its general failure to deal with matters necessary to close said financing.

(20) The delay in closing the [PIDA] portion of the financing was in no way attributable to [appellants].

Complaint ¶¶ 13, 18–20. In conclusion, the complaint sought damages for the costs that were incurred incident to the delay. *Id.* ¶ 21.

On these facts, we conclude that the lower court erred in finding that appellants' complaint was based upon an allegation of nonperformance rather than improper performance. Thus, under the distinction outlined in *Raab,* appellants have properly set forth a cause of action in tort, deriving from appellee's negligent performance of its contractual duties. Moreover, the release provision upon which the lower court based its decision clearly does not apply to cases where appellee is alleged to have been negligent. *See, e.g., Wolbach v. Fay,* 488 Pa. 239, 242, 412 A.2d 487, 488 (1980) (citation omitted) (effect of release must be determined from ordinary meaning of its language). Because the lower court based its order entering summary judgment solely upon the release, and because we have

found that the court erred in concluding that the release was applicable to appellants' complaint, we reverse the order below and remand the case for trial.

For the foregoing reasons, we reverse and remand the case for trial.

Reversed and remanded for trial. Jurisdiction is relinquished.