**ALLIED FIRE & SAFETY EQUIPMENT CO.**

v.

**DICK ENTERPRISES, INC., American Casualty Co. and Continental Casualty Co.**

Civ. A. No. 94–3489.

United States District Court, E.D. Pennsylvania.

May 25, 1995.

Robert T. Carlton, Jr., McAleese, McGoldrick & Susanin, King of Prussia, PA, for plaintiff.

Roy A. Powell, Brian C. Castello, and Gretchen L. Jankowski, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Defendants have moved this Court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). According to the Complaint, Defendant, Dick Enterprises, Inc., was hired by the Pennsylvania Convention Center Authority (PCCA) as the prime contractor for the exhibit hall of Pennsylvania's Convention Center in Philadelphia. Defendants, American Casualty Company and Continental Casualty Company, were sureties to Dick for the construction.

In 1991, Dick entered into a subcontract agreement with Plaintiff, Allied Fire and Safety Equipment Company, whereby Plaintiff agreed to supply and install part of the fire protection systems for the Convention Center. Plaintiff is a New Jersey contractor engaged in the business of constructing fire protection systems. According to the Complaint, the Subcontract, among other things, required Dick or its subcontractors to construct ceilings from which Plaintiff was to hang the fire protection system, as well as walls through which Plaintiff would pass the system. The Complaint alleges that Plaintiff was only to construct the fire protection system in areas completed and released to it by Dick.

The Complaint alleges that in 1991, Plaintiff began work on the Convention Center, but Dick's coordination of Plaintiff's work was such that Plaintiff was forced to work in a sporadic, untimely, out of sequence, and otherwise unreasonable manner. Further, the Complaint alleges that the unreasonable requirements Dick had for Plaintiff hindered, interfered with, impeded, delayed, interrupted and disrupted Plaintiff's performance, which caused various damages to Plaintiff.

The Complaint alleges seven counts against all three Defendants. These counts are: (1) breach of contract, (2) quasi-contract, (3) negligence, (4) loss of bonding capacity, (5) final payment entitlement, (6) payment for extras and (7) declaratory judgment. Defendants move to dismiss the Complaint on the ground that, as a matter of law, Plaintiff cannot state a claim under any of the counts.

In considering a 12(b)(6) motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). The Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). We shall address each of Plaintiff's claims in turn.[1]

## COUNT ONE—BREACH OF CONTRACT

### 1. Coordination Responsibilities

Defendants' primary argument why Count One must be dismissed is based on the face of the Subcontract. Defendants argue that the Subcontract demonstrates that Plaintiff has no claim, and therefore, there is no set of facts upon which relief could be granted. *Jacksonville Newspaper Printing Pressmen*

---

1. According to Plaintiff, it has withdrawn Count Seven, for declaratory judgment, although it does not appear that any formal action has been taken. Because the claim has been withdrawn, we will not address Defendants' arguments with respect to it.

& *Assistants' Union v. Florida Publ. Co.,* 340 F.Supp. 993, 995 (M.D.Fla.1972), *aff'd,* 468 F.2d 824 (5th Cir.1972), *cert. denied,* 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973). Defendant points to language in the Subcontract which states, the "subcontractor shall coordinate his work with the work of other trades." Subcontract, art. 1, ¶ 7.[2] Because of this language, Defendants assert, Dick plainly had no duty to coordinate Plaintiff's work. Because Count One alleges that the damages Plaintiff suffered were caused by Dick's failure to coordinate Plaintiff's work, Defendants argue that the Count must be dismissed.

Plaintiff supports Count One with the argument that Dick had both express and implied duties to ensure that Plaintiff had reasonable access to its work areas and to see that the work of others did not unduly hinder, delay or render more expensive the performance of Plaintiff's work. Plaintiff finds support for its express duty argument in the terms of the prime contract between Dick and the PCCA. That contract specifically requires that the "Contractor shall ensure that all Subcontractors work in a harmonious and efficient manner and shall coordinate the work of all Subcontracts," and that the "Contractor shall also be responsible for the coordination of the work of the Trades, Subcontractors, Suppliers and Materialmen." Contract, art. 13 (A & B).

Plaintiff supports its implied duties argument with case-law holding that "the prime contractor implicitly promises to provide such working conditions as may be necessary to allow its subcontractor to carry out its obligations under the contract." *See e.g. United States v. William F. Klingensmith, Inc.,* 670 F.2d 1227, 1230 (D.C.Cir.1982); *E.C. Ernst, Inc. v. Koppers, Co.,* 476 F.Supp. 729, 754–56 (W.D.Pa.1979), *aff'd in part, rev'd in part on other grounds,* 626 F.2d 324 (1980). In contrast, Defendants argue that this Court cannot imply any duties into the contract when the contract includes express provisions to the contrary. *USX Corp. v. Prime Leasing, Inc.,* 988 F.2d 433, 438 (3d

Cir.1993) ("one can invoke 'implied' terms only when there are no express terms in the contract relating to the particular issue").

■ We find that Plaintiff could prove a set of facts to demonstrate that Dick had an implied duty not to hinder Plaintiff's work, and that Dick did, in fact, hinder the work to Plaintiff's detriment. By so finding, we do not imply a term that is already covered by an express term. This is because the express term on which Defendant relies concerns coordination of work, whereas this Court would imply a term imposing affirmative duties not to interfere. The fact is that these two duties are not coextensive. It is easy to imagine a situation where, for example, a contractor would coordinate a subcontractor's work to take place after all necessary items have been installed, yet could still hinder that subcontractor's work by, for example, preventing access to the work site.

Likewise, several courts interpreting government contracts have expressly addressed the situation where the contractor's contract requires it to coordinate its work with those of other contractors, yet these courts have found the owner liable, nonetheless, for hindering the contractor's work. *In re Jacobson & Co.,* GSBCA No. 5605, 1980 Westlaw 3281 (June 18, 1980, BCA); *In re Pierce Assoc.,* GSBCA No. 4163, 1977 Westlaw 1976 (Aug. 18, 1977 BCA); *Paccon, Inc. v. United States,* 399 F.2d 162 (Ct.Cl.1968). For these reasons, we do not dismiss Count One for failure to state a claim upon which relief can be granted.

*2. Exculpatory Clauses*

Dick argues that the Subcontract includes an exculpatory clause that serves to relieve it of any liability arising from delays. This clause, in full, states:

> If the Subcontractor is delayed in the prosecution of its work due to the acts of the Owner and/or its agents and the Subcontractor suffers delay damages therefrom, the Contractor agrees to transmit to the Owner any claims submitted to it by the Subcontractor. The Owner's decision

---

**2.** Other clauses in the Subcontract also create such a duty in the subcontractor. *See* Subcontract, art. 1, ¶ 4(a); art 24(j); art. 26.

regarding such claims will be final and binding upon Subcontractor. It is agreed that *in no event will the Contractor be liable for Subcontractor's claims for delay; the Contractor under this paragraph merely acts as a conduit to provide the Subcontractor access to the Owner to seek reimbursement for damages incurred for delays* caused by the Owner and/or its agents.

Subcontract, art. 29 at pp. 13–14. Plaintiff argues that Dick's reliance on the underlined material is inappropriate for two reasons.

First, Plaintiff asserts that its claims are for delay caused by Dick, the Contractor, and not for delays caused by PCCA, the Owner. Plaintiff argues therefore that article 29 has no bearing on the disputes at issue here. Second, Plaintiff argues that in Pennsylvania,[3] exculpatory clauses are not given effect when the plaintiff alleges that the defendant actively delayed and hindered the performance of the contract. *Grimme Combustion, Inc. v. Mergentime Corp.*, 406 Pa.Super. 620, 631, 595 A.2d 77 (1991), *app. denied*, 530 Pa. 644, 607 A.2d 254 (1992).

■ We find that Plaintiff's Complaint alleges that Dick affirmatively hindered Plaintiff's performance of the· Subcontract. For this reason, we find that the exculpatory clause in the Subcontract will not bar this claim for breach of contract, and we therefore will not dismiss the claim. *Grimme*, 595 A.2d at 83.

### COUNT TWO—QUASI–CONTRACT

■ Plaintiff's second cause of action is brief, and avers simply that the work performed and the labor, materials, and equipment furnished were for the benefit of Dick, and by virtue of that, Defendants are liable to Plaintiff in quasi-contract. Quasi-contract is a cause of action designed to cure unjust enrichment. To recover, the "claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989,

999 (3d Cir.1987) (citing *Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581 (1985)).

Defendant argues that this claim should be dismissed because Plaintiff has pleaded the existence of an express contract, which generally precludes recovery in quasi-contract. *Wingert v. T.W. Phillips Gas & Oil Co.*, 398 Pa. 100, 105, 157 A.2d 92, 94 (1959). Defendants acknowledge one exception to this rule, that when work is performed outside the scope of an express contract, recovery in quasi-contract is possible. *Allegheny County Housing Auth. v. Caristo Constr. Corporation*, 90 F.Supp. 1007, 1010 (W.D.Pa.1950); *Shipley v. Pittsburgh & L.E.R.R. Co.*, 68 F.Supp. 395, 402 (W.D.Pa.1946). Defendants assert, however, that Plaintiff has not pleaded any facts that would permit recovery under this exception to the quasi-contract rule.

Plaintiff, in contrast, argues that it can plead quasi-contract in the alternative to its breach of contract claim so that it can recover if the express contract is found to have been rescinded, abandoned, or replaced by the quasi-contract. It cites a number of cases from other jurisdictions to support this contention, as well as one case from this district. *United States v. Montgomery*, 155 F.Supp. 384 (E.D.Pa.1957), *aff'd*, 253 F.2d 427 (3d Cir.1958). Plaintiff also asserts that even if the express contract stands, it performed work outside the scope of the contract, and can recover for that work under quantum meruit.

■ Plaintiff's allegations that it performed work for Dick in excess of the express contract, and Plaintiff's pleading that the express contract was breached by Dick are sufficient to show claims upon which relief could be granted. *Hershey Foods*, 828 F.2d at 992; *Birchwood Lakes Comm. Ass'n v. Comis*, 296 Pa.Super. 77, 86, 442 A.2d 304, 309 (1982). Accordingly, we do not dismiss Count Two.

### COUNTS THREE AND FOUR—NEGLIGENT BREACH OF CONTRACT AND LOSS OF BONDING CAPACITY

Defendants seek to dismiss these two negligence claims on the basis that the claims

---

**3.** The parties agree that Pennsylvania law applies due to a choice of law provision in the Subcontract, and also because the Subcontract was entered into in Pennsylvania, the causes of action accrued in Pennsylvania, and Dick is a citizen of Pennsylvania.

properly arise in contract, and therefore, tort causes of action on the same facts are inappropriate. In support of this argument, Defendants cite many Pennsylvania cases that caution against blurring the line between contract and tort. *Glazer v. Chandler*, 414 Pa. 304, 308, 200 A.2d 416, 418 (1964); *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 440 (3d Cir.1993) ("breach of contract, without more, is not a tort") (quoting *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir.1993)). Our Court has previously held that the difference between tort and contract is that "tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.*, 457 F.Supp. 1158 (E.D.Pa.1978) (quoted by *Bash v. Bell Telephone Company*, 411 Pa.Super. 347, 601 A.2d 825 (1992)). Due to this understanding, Pennsylvania courts have not hesitated to grant summary judgment in contract cases that do not present valid tort claims. *Closed Circuit Corp. v. Jerrold Elecs.*, 426 F.Supp. 361, 364 (E.D.Pa.1977); *Glazer*, 414 Pa. at 308, 200 A.2d at 418.

Plaintiff argues, though, that Pennsylvania does recognize tort causes of action in otherwise contract cases when the plaintiff alleges misfeasance of a duty, not nonfeasance.[4] *Hirsch v. Mount Carmel Dist. Indus. Fund*, 363 Pa.Super. 433, 435, 526 A.2d 422, 423 (1987); *Raab v. Keystone Ins. Co.*, 271 Pa.Super. 185, 187, 412 A.2d 638, 639 (1979); *Hough/Loew Assoc. v. CLX Realty Co.*, 760 F.Supp. 1141, 1146 (E.D.Pa.1991), *vacated in part on other grounds*, 1991 WL 86937 1991 U.S.Dist. Lexis 6944 (E.D.Pa. May 17, 1991). The most thorough analysis of the case-law on this issue can be found in our sister court in New Jersey. *Public Serv. Enterp. Group v. PECO*, 722 F.Supp. 184 (D.N.J.1989). There, the District Court was required to apply Pennsylvania law in a case where plaintiffs sued the defendant for both breach of contract and tortious conduct on the same

facts. The Court conducted an exhaustive survey of the relevant case-law and concluded that in Pennsylvania, a misfeasance/nonfeasance analysis was in use by the highest court that had addressed the issue, the Pennsylvania Superior Court. *Hirsch*, 363 Pa.Super. 433, 526 A.2d 422. Accordingly, the District Court did not dismiss the tort cause of action.

Since then, this New Jersey decision has been used by at least one Pennsylvania court as support for its decision not to dismiss a tort claim based on a contract. *Grode v. Mutual Fire Ins. Co.*, 154 Pa.Commw. 366, 623 A.2d 933 (1993). That Court stressed, however, that its ruling was "made at an early stage of the case, on preliminary objections. Thus, we are only holding that the case before us is permitted to proceed on both contract and tort theories." *Id.* 623 A.2d at 936–37.

■ We find that the state of the law in this area is confused and contradictory, and that even while permitting tort claims to go past the pleading stage, courts have expressed distaste for their decisions. *Grode*, 623 A.2d at 936; *Hirsch*, 363 Pa.Super. at 435–36 nn. 1 & 2, 526 A.2d at 423 nn. 1 & 2; *Public Service*, 722 F.Supp. at 208, 211. This is, however, a motion to dismiss under Rule 12(b)(6). Our question, then, is whether there is any state of facts with which Plaintiff could prove its claim. We find that there is "simply too much Pennsylvania case law which subjects a party to tort liability for improperly performing its contractual duties" for this Court to dismiss Plaintiff's tort causes of action. *Public Serv.*, 722 F.Supp. at 211. Because we find that Plaintiff has pleaded misfeasance of duties, we find that Plaintiff's Counts Three and Four should not be dismissed.

## COUNTS FIVE AND SIX—FINAL PAYMENT ENTITLEMENT AND ENTITLEMENT TO PAYMENT FOR EXTRAS AND CHANGES

Defendants seek to dismiss these counts on the ground that neither count is actually a

---

**4.** There is a line of cases that looks to the "gist" of the action to determine whether a claim in tort can stand. *Closed Circuit*, 426 F.Supp. at 364. At least one court, however, has held that these two lines are compatible in that they both look to "how much the claims in the pleadings relate to the contracts involved." *Grode*, 623 A.2d at 935 n. 3.

cause of action, but rather is a claim of relief for previously pleaded causes of action. They base this argument largely on the language of the claims. Count Five states in pertinent part, "Allied has completed its work under the subcontract and is thus entitled to final payment under the terms of the subcontract." Count Six states in pertinent part, "[d]uring the course of the performance of Allied's work, Dick directed Allied to perform extras and changes, for which it agreed to compensate Allied." Defendants argue that Count Five is simply a request for relief under Count One, the breach of contract claim, and that Count Six is either a request for relief under Count One as well, or under Count Two, the quantum meruit claim.

Plaintiff asserts that these are valid causes of action. With respect to Count Five, it argues that the Public Works Contractor's Bond Law of 1967 was incorporated into its Subcontract with Dick. This law, codified at 8 Pa.Stat.Ann. § 194(a) (Supp.1994), provides in relevant part that "any claimant who has performed labor or furnished material in the prosecution of the work provided for in the contract ... and who has not been paid in full therefor, ... may bring an action on such payment bond in his own name." Plaintiff asserts that under this statute, it is entitled to relief, as claimed in Count Five.

With respect to Count Six, Plaintiff asserts that when a subcontractor performs extra work at the request or direction of the prime contractor, the subcontractor is entitled to compensation. It cites a number of cases that acknowledge entitlement to such relief. *Exton Drive–In, Inc. v. Home Indem. Co.,* 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied,* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 244 A.2d 10, 15–16 (1968); *E.C. Ernst, Inc. v. Koppers, Co.,* 476 F.Supp. 729, 754–56 (W.D.Pa.1979), *aff'd in part, rev'd in part on other grounds,* 626 F.2d 324 (1980).

■ The major flaw in Plaintiff's arguments, however, and the reason we will dismiss Counts Five and Six, are that the rights

to relief it asserts are just that; not independent causes of action. Plaintiff has not presented any cases to this Court that are causes of action brought directly under the Public Works Contractor's Bond Law of 1967. It appears that claims under the Public Works Contractor's Bond Law of 1967 are actually brought as breach of contract actions. *See e.g., Manganas Printing Co. v. Joseph Bucheit & Sons Co.,* 601 F.Supp. 776 (W.D.Pa.1985). Similarly, the cases Plaintiff cites to support its quantum meruit claim are in fact breach of contract or quasi-contract actions, where reimbursement was the relief sought, not the cause of action. *See e.g., Exton Drive–In,* 436 Pa. 480, 261 A.2d 319. For these reasons, we dismiss Counts Five and Six of Plaintiff's Complaint, because they seek remedies under claims already pleaded in Counts One and Two.[5]

## STAY PENDING ARBITRATION

Finally, Defendants assert that this Court should stay this action so as to allow arbitration to go forward unhindered. The Subcontract provides for arbitration of certain claims arising from disputed or unilateral change orders. Defendants cite several cases of the Third Circuit where that Court discussed a district court's power to stay judicial proceedings in favor of arbitration. *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 784 (3d Cir.1975); *Merritt–Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n,* 387 F.2d 768, 773 (3d Cir. 1967); *see also UMC Petroleum Corp. v. J & J Enterp. Inc.,* 758 F.Supp. 1069, 1074 (W.D.Pa.1991).

In turn, Plaintiff cites several cases arguing that this action should not be stayed. *Marcune v. Coker,* 678 F.Supp. 121 (E.D.Pa. 1988); *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961 (S.D.N.Y. 1987), *aff'd,* 847 F.2d 834 (2d Cir.1988). It also argues that only nine of its nineteen claims are subject to arbitration because the others are either over the jurisdictional amount of $250,000.00 or involve the Owner.

■ We find that we have the power to stay this action while arbitration goes on.

---

**5.** Because of this ruling, Defendants' alternate request for more specific pleading of these counts is mooted.

*Marcune,* 678 F.Supp. at 124. We also find that this power should be exercised when it appears that the arbitrable claims overwhelm the non-arbitrable claims, or when the arbitrable claims will have some affect on the non-arbitrable claims. *UMC,* 758 F.Supp. at 1074. We find that here, the nine claims that are arbitrable do not overwhelm the claims that, at least at this point, are not arbitrable, nor have Defendants demonstrated that arbitration of those claims will affect the action in this Court. Accordingly, we will not stay this action, but expect that both this action and the arbitration will go forward concurrently. *Creative Securities,* 671 F.Supp. at 971.

Defendants disagree with Plaintiff's interpretation of the Subcontract, and as a result, argue that more, if not all, of Plaintiff's claims should be submitted to arbitration than the ones Plaintiff currently concedes are arbitrable. There is also a dispute as to which body should make the determination whether a claim is arbitrable or not—this Court or the arbitration panel. We find, however, that these issues have not been thoroughly argued before us. We invite the parties to resubmit these questions to us at a later date, when discovery is further along, and when the parties can focus on these particular questions.

An appropriate Order follows.

### ORDER

AND NOW, this 25th day of May, 1995, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint, or alternatively, Motion to Stay Proceedings Pending Arbitration, and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART. The Motion is GRANTED in that Counts Five and Six are hereby DISMISSED, but in all other respects, the Motion is hereby DENIED as discussed in the attached Memorandum. Upon representation of Plaintiff, Count Seven, for declaratory relief, is hereby WITHDRAWN without prejudice.