525 A.2d 736

S.N.T. INDUSTRIES, INC., a corporation, and Stephen P. Stavros and Tula Stavros, Appellees,

v.

Clifford T. GEANOPULOS and Thomas Geanopulos, individuals, the Doggery, Inc., a corporation, and Nicholas Geanopulos, Appellants.

Superior Court of Pennsylvania.

Argued March 5, 1985.

Filed March 30, 1987.

Reargument Denied May 19, 1987.

98

Stephen J. Harris, Pittsburgh, for appellants.

Louis C. Long, Pittsburgh, for appellees.

Before BROSKY, WIEAND and LEDERER, JJ.

PER CURIAM:

This matter is before the Superior Court following remand, 512 Pa. 330, 516 A.2d 705, by the Supreme Court with instructions to consider the merits of the appeal.[1]

S.N.T. Industries, Inc. was a corporation engaged in the operation of a fast food restaurant under the name of "The Doggery" in the Pitt Building in downtown Pittsburgh. Fifty percent of the corporate stock was owned by Stephen P. Stavros and Tula Stavros, husband and wife, as tenants by the entireties. The other fifty percent of the stock was owned by Clifford Geanopulos and his son, Nicholas. Thomas Geanopulos, another son of Clifford Geanopulos, owned, with his brother, Nicholas, The Doggery, Inc., which

---

1. A panel of this Court had previously quashed the appeal because the specific issues argued on appeal had been raised only in supplemental post-trial motions filed without leave of court after the time for filing post-trial motions had expired.

operated a growing number of fast food outlets also under the name of "The Doggery."

S.N.T. Industries conducted its business in the Pitt Building pursuant to lease with Lepar, Inc. A lease had been executed in 1977 for a five year term with an option to renew for another five year term. The lease, however, contained a provision permitting termination upon sale of the Pitt Building; but if the building were sold within five years, the tenant was to be permitted to recoup a proportionate part of the cost which it had expended in remodeling the demised premises. The building was thereafter sold by Lepar, Inc. to Coin Flip Associates; and on January 30, 1979, all tenants of the Pitt Building received formal written notification that their leases were being terminated. In fact, however, all tenants except S.N.T. Industries, Inc. were permitted to remain in the building and were able to re-negotiate their leases.

Stavros attempted to negotiate a new lease on behalf of S.N.T. Industries, Inc. with Edward Goldston, the managing partner of Coin Flip Associates. At this time friction already existed between the Stavros and Geanopulos interests, and Stavros had offered to sell his interest or buy the other one-half interest for $60,000. Clifford Geanopulos refused to accept either of these propositions. When Stavros expressed a desire to offer a higher rental for a new lease, the amount thereof was vetoed by Clifford Geanopulos. Clifford Geanopulos, however, made no effort himself to negotiate a new lease for the corporation's business. Although Clifford and Nicholas Geanopulos denied knowledge thereof, the evidence was clear that at the same time, Thomas Geanopulos was secretly negotiating a lease on behalf of The Doggery, Inc. On March 20, 1979, S.N.T. Industries, Inc. was given written notice that negotiations were at an end and that the premises were to be vacated no later than May 31, 1979. Believing the corporation was going out of business, Stavros was induced to agree to a sale of the corporation's equipment to Thomas Geanopulos, who represented that he would use it in some other location.

On the final day of operation, Stavros accepted his portion of the price for the equipment and his portion of the refund from the landlord, believing that all operations were ceasing. On the next business day, much to his surprise, he found the same business being operated from the same premises, under the same name, i.e., The Doggery, by Thomas Geanopulos. The only difference was that Stavros and his daughter, who had worked there, were now excluded.

■ Stavros and the corporation commenced a civil action to recover compensatory and punitive damages against the members of the Geanopulos family and the corporation which they owned, i.e., The Doggery, Inc.[2] It was alleged that the defendants had (1) conspired to breach fiduciary duties owed to S.N.T. Industries, Inc. and (2) tortiously interfered with existing or prospective contractual relationships between S.N.T. Industries and Coin Flip Associates.

In addition to the facts herein previously narrated, the evidence showed, as recited in the opinion of the trial court, that

"[w]hile Stavros was still trying to obtain a new lease for S.N.T. from Goldston, the latter said nothing about having entered into an understanding in principle with Thomas Geanopulos as early as February of 1979. Pursuant to this understanding, Coin Flip gave a long term percentage lease to Thomas, and the latter obligated himself to expend $200,000 in improvement of the Pitt Building. Goldston also obtained from Thomas the money with which Coin Flip settled its obligation to S.N.T. for early cancellation of the latter's lease, but pretended that this money came from Coin Flip. Then Goldston, being aware

2. The trial court allowed a subsequent amendment which enabled Tula Stavros to be joined as a plaintiff, for she owned jointly with her husband a fifty percent interest in the corporation as tenants by the entireties. Appellants contend that this was error because the joinder occurred after the statute of limitations had expired. We reject this contention. The amendment served only to identify correctly the entity which owned a fifty percent interest in the corporation. See: *Moyer v. Frankford Crate Co.,* 133 Pa.Super. 323, 2 A.2d 587 (1938); *Aiken v. Mayberry,* 128 Pa.Super. 15, 193 A. 374 (1937).

that his collaboration and surreptitious dealing could lead to liability of Coin Flip or himself, obtained from Thomas an indemnification agreement covering all expenses, judgments or attorneys' fees which might result from the cancellation of the lease to S.N.T. and Stavros. There also was the testimony of a witness who had overheard Clifford and Thomas conversing in hushed tones about their plan to take over the Smithfield Doggery.

Trial Court Opinion at p. 5.

The jury which heard the case returned verdicts in favor of the plaintiffs, which the court molded to award to the individual plaintiffs compensatory damages of $62,000 and punitive damages of $50,000. Post-trial motions were denied, and judgment was entered on the verdict.

On appeal, it is argued that the evidence was insufficient to sustain the verdict. "When a court is considering judgment notwithstanding the verdict, the party in whose favor the verdict has been entered ... is entitled to the benefit of every fact pertinent to the issue or issues which may reasonably be deduced from the evidence; such facts and inferences must be taken as true, all testimony must be read in the light most favorable to such party, and all conflicts of evidence must be resolved in his favor, whether such testimony has been offered by him or his adversary." 10 Std.Pa. Practice § 64:14. See: *Estate of Flickinger v. Ritsky*, 452 Pa. 69, 76, 305 A.2d 40, 44 (1973).

■ We have reviewed the evidence and conclude that it was sufficient to enable a jury to find that Clifford Geanopulos and his sons, Nicholas and Thomas, conspired to and did breach a fiduciary duty owed to S.N.T. Industries, Inc. by seizing a corporate opportunity for themselves. See: Act of May 5, 1933, P.L. 364, § 408, 15 P.S. § 1408 (officers and directors stand in fiduciary relation to corporation and must discharge their duties in good faith); *Seaboard Industries Inc. v. Monaco*, 442 Pa. 256, 261–262, 276 A.2d 305, 309 (1971) (officers and directors owe corporation their undivided loyalty and may not usurp corporate opportunities for themselves).

The evidence was also sufficient to establish a cause of action for intentional interference with prospective contractual relations. In *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971), the Supreme Court held that interference with a prospective contractual relation is a tort and adopted the rule of the Restatement of Torts § 766, which provided as follows:

> ... one who, without a privilege to do so, induces or otherwise purposely causes a third person not to ... (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

Section 766B of the Restatement (Second) of Torts provides that

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

Comment e to this section refers the reader to Restatement (Second) of Torts § 766, comment k, where the following appears:

> There is no technical requirement as to the kind of conduct that may result in interference with the third party's performance of the contract. The interference is often by inducement. The inducement may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other. Thus, it may be a simple request or persuasion exerting only moral pressure. Or it may be a statement unaccompanied by any specific request but having the same effect as if the request were specifically made.... Or it may be the promise of a benefit to the third person if he will refrain from dealing with the other.

In the instant case, the evidence, although predominantly circumstantial, was sufficient to permit a finding that the defendants had (a) induced the landlord not to lease the premises to S.N.T. Industries but to enter a new lease with the Geanopulos interests and (b) prevented S.N.T. Industries from offering a sufficient rental to obtain the lease necessary to a continuation of the business by the corporation which was owned jointly by Stephen and Tula Stavros and Clifford Geanopulos.

■■■ Of course, an interference with the prospective contractual relation must also be improper to be actionable. However, in view of the fact that Clifford and Nicholas Geanopulos were in a fiduciary relationship as directors of S.N.T. Industries, Inc., the fact that the Geanopulos interests seized a corporate opportunity was itself evidence that their interference with a prospective lease in favor of S.N.T. Industries, Inc. was wrongful.

We conclude, therefore, that the evidence was sufficient to support a verdict in favor of the plaintiff-appellees. The trial court properly denied appellants' motion for judgment n.o.v. Appellants contend, in the alternative, that the verdict was against the weight of the evidence. Again, we disagree.

■■■ "A new trial will be awarded on the ground that the verdict is against the weight of the evidence, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail." 10 Std.Pa. Practice § 62:59. See: *Macina v. McAdams*, 280 Pa.Super. 115, 118, 421 A.2d 432, 433 (1980); *Ditz v. Marshall*, 259 Pa.Super. 31, 35, 393 A.2d 701, 703 (1978). "However, where the jury's verdict is supported by testimony which is not inherently improbable nor at variance with admitted or proven fact or with ordinary experience, a new trial will not be granted." 10 Std.Pa. Practice § 62:59. Moreover, a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury

could have decided in favor of either party. *Hilliard v. Anderson,* 440 Pa. 625, 628, 271 A.2d 227, 228 (1970); *Macina v. McAdams, supra,* 280 Pa.Super. at 118, 421 A.2d at 433. In the instant case, the trial court's conscience was not shocked by the verdict—as the court's opinion emphatically makes clear—and we find no basis for registering disagreement with the court's conclusion that the verdict was consistent with the weight of the evidence.

Although citing no specific error in the trial court's jury instructions, appellants contend that they should receive a new trial because the trial court "emphasized and highlighted plaintiffs' theory of the case." We have reviewed the trial court's charge to the jury and find no basis whatsoever for appellants' assertion. The trial court instructed the jury regarding the several grounds on which the plaintiff-appellees sought recovery and defined in a clear and impartial manner the elements of those alleged causes of action. The trial court also explained to the jury the assertions of the defense and reviewed the testimony that Thomas Geanopulos had negotiated the new lease on his own and without the knowledge of his father and brother. Indeed, the trial court's charge was commendable for its clarity and for its unbiased explanation of the issues to be resolved by the jury. We find no error therein and no basis for giving credence to appellants' general assertion that the trial court unfairly highlighted the contentions of the appellee-plaintiffs.

The trial court also did not err in molding the verdict. The jury found that S.N.T. Industries had been damaged in the amount of $124,000 and awarded the corporation punitive damages of $100,000. Because the Stavros's interest in the corporation was fifty (50%) percent, the trial court directed that the verdict in their favor be entered as one-half of the damages awarded to S.N.T. Industries, Inc. The amount of the judgment in favor of the Stavroses, and the only amount which the individual plaintiffs were entitled to recover, was $112,000. This was not error.

Judgment affirmed.

LEDERER, J., was specially assigned by the Supreme Court, heard oral argument, and participated in the initial decision to quash. He did not participate in the decision of the appeal on its merits following remand by the Supreme Court.