**HOUGH/LOEW ASSOCIATES, INC.**

v.

**CLX REALTY CO. and Martin H. Fowler.**

**Civ. A. No. 90–5859.**

United States District Court,
E.D. Pennsylvania.

March 29, 1991.

John F. Stoviak, Saul, Remick & Saul, Philadelphia, Pa., for plaintiff.

Gerald F. McCormick, Duane, Morris, Hecksler, Wayne, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This diversity action stems from a business and development agreement entered into by plaintiff Hough/Loew Associates (Hough/Loew) and defendant CLX Realty Company (CLX). Defendant Martin H. Fowler is the President and Chief Executive Officer of CLX. Plaintiff's complaint asserts causes of action against both defendants for tortious interference with prospective contractual relations (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), negligent misrepresentation (Count IV), and negligent breach of contract (Count V). Now before this court is defendants' motion to dismiss 1) all counts against defendant Fowler for lack of personal jurisdiction, and 2) all counts—except Count II (breach of contract)—against both defendants for failure to state causes of action. For the reasons that follow, defendants' motion will be granted in part and denied in part.

### I.

In considering a motion to dismiss, I must accept the allegations recited in the complaint as true and construe them in the light most favorable to the plaintiff. See *Angelastro v. Prudential Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985).

According to the complaint, Hough/Loew and CLX entered into an agreement in May of 1986 for the purpose of developing a parcel of land in Chester County, Pennsylvania, as an "auto mall" where various automobile dealerships could locate and conduct business. Pursuant to the terms of the agreement, CLX retained title to the property, while Hough/Loew undertook to develop it into subdivided lots and to secure third-party purchasers for each of these lots. The agreement provided that Hough/Loew could include "in any sales agreement a provision that would allow Hough/Loew to obtain the building construction contract" from the purchaser of a lot. Complaint ¶ 15.[1]

In reliance upon the agreement, Hough/Loew developed a complete architectural design for the buildings to be developed on the property, and succeeded in securing purchasers for five of seven subdivided lots: on four of the five, it entered into subsequent construction contracts with the purchasers; on the fifth, it collected a fee from the purchaser in lieu of a construction contract. Some of these lots were purchased by the Scott Family Partnership (Scott), pursuant to sales agreements conditioned upon Scott's entry into subsequent construction contracts with Hough/Loew.

In May of 1990, a sixth lot—so-called Subdivided Lot No. 5.—was sold by CLX to Scott via a transaction in which Hough/Loew played no part. Instead of relying on Hough/Loew to arrange and conduct the sale, CLX sold the lot through its agent Looker, Lees & Melcher, Inc. (Looker). Fowler directed Looker not to involve Hough/Loew in the sale of Subdivided Lot No. 5.

---

**1.** Hough/Loew was also provided the option to purchase developed lots in accordance with a pricing schedule set by CLX.

The basic thesis of Hough/Loew's complaint is that CLX and Fowler "knowingly and recklessly" violated the terms of the Hough/Loew–CLX agreement by excluding Hough/Loew from all transactions involving the sale of Subdivided Lot No. 5, and thereby deprived Hough/Loew of the benefits it was due upon sale, including the opportunity to consummate subsequent construction contracts with Scott.

## II.

Defendants first contend that this court lacks personal jurisdiction over defendant Fowler. They argue that the complaint contains no allegation suggesting that Fowler, a citizen of California, was doing business in Pennsylvania in a personal as opposed to a corporate capacity, and that, therefore, he cannot be personally subject to this court's jurisdiction. See *Techno Corporation v. Dahl Associates, Inc.*, 521 F.Supp. 1036 (W.D.Pa.1981) (personal jurisdiction, asserted under Pennsylvania's long-arm statute, on the basis of an individual's business activities in the Commonwealth, turns on whether individual's business activities can be distinguished from those of his corporation).

Plaintiff responds that further discovery is necessary to establish the full extent of Fowler's personal role, and that, in any event, even if it is determined that Fowler was acting solely in a corporate capacity, this court may assert extraterritorial *in personam* jurisdiction on the basis of Fowler's personal liability for tortious acts committed by his corporation within Pennsylvania.

■ The authorities are mixed as to whether *in personam* jurisdiction may be asserted over a non-resident corporate officer for his role in tortious corporate conduct occurring in Pennsylvania. Compare *Vespe Contracting Co. v. Anvan Corp.*,

433 F.Supp. 1226 (E.D.Pa.1979); *Lightning Systems v. Intern. Merchan. Assoc.*, 464 F.Supp. 601 (W.D.Pa.1979) (asserting personal jurisdiction) and *Techno Corporation, supra* (denying personal jurisdiction). As a general rule, corporate officers are personally liable for torts committed by their corporation under their direction or with their participation. See *Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967). Here, plaintiff's complaint alleges that Fowler played a personal role in the alleged torts committed by his corporation in Pennsylvania.[2] I conclude that Fowler's alleged personal involvement in the tortious conduct alleged in plaintiff's complaint is sufficient to sustain this court's exercise of extraterritorial *in personam* jurisdiction.[3]

## III.

Having concluded that this court has jurisdiction, I now turn to the substance of plaintiff's complaint.

### A.

### *Tortious Interference with Prospective Contractual Relations*

■ In Count I, plaintiff asserts a cause of action for "tortious interference with prospective contractual relations." The parties agree that such a tort is recognized in Pennsylvania and consists of the following elements:

(1) Prospective contractual relationship;

(2) Purpose or intent to harm plaintiff by preventing the relationship from occurring;

(3) Absence of privilege or justification on the part of the defendant; and

(4) Occurrence of actual harm or damage to the plaintiff as the result of defendant's conduct.

See, e.g., *M. Leff Radio Parts, Inc. v. Mattel, Inc.*, 706 F.Supp. 387 (W.D.Pa.1988); *SHV Coal Company, Inc. v. Continental*

---

**2.** "In consummating the sale of Lot. No. 5 to Scott, Fowler directed Lookers, Lees & Melcher not to involve Hough/Loew in the sale of Lot No. 5." Complaint ¶ 27. "CLX and Fowler knowingly and recklessly engaged in acts and practices which operated to deprive Hough/Loew of its contractual rights under the agreement." Complaint ¶ 23.

**3.** If further discovery does not confirm the complaint's allegations as to defendant Fowler's personal involvement, then I will entertain a supplemental motion to dismiss plaintiff's complaint as against defendant Fowler.

*Grain Company,* 376 Pa.Super. 241, 545 A.2d 917 (1988).

Plaintiff submits that the first element—the existence of a prospective *contractual* relationship—is met by allegations recited in the complaint to effect that

(1) the parties agreed that Hough/Loew would receive additional compensation by including in each sales agreement a provision that allowed Hough/Loew to obtain building contracts for each lot; (2) Hough/Loew actually constructed buildings and improvements on four of the lots which it sold; (3) Hough/Loew received compensation in excess of $300,000 in lieu of a construction contract for the fifth lot which was sold; and (4) Hough/Loew had previously sold a lot to Scott and constructed a building on the Scott lot.

See plaintiff's memorandum at p. 16 (record citations omitted).

However, these allegations are insufficient to state a cause of action for interference with a prospective relationship. The complaint does suggest that Hough/Loew maintained, through its agreement with CLX, an opportunity to form and eventually consummate prospective contracts with interested third-parties; and it does suggest that CLX sold Subdivided Lot No. 5 directly to Scott, without involving Hough/Loew, thereby depriving Hough/Loew of a route through which it hoped to form and consummate a construction contract. But it does not suggest that Hough/Loew's expected route of contract formation had succeeded in generating a prospective contract with regard to Subdivided Lot No. 5 with which CLX interfered. There is no allegation included in the complaint to the effect that any preliminary negotiations about Subdivided Lot No. 5 were under way between Hough/Loew and Scott or between Hough/Loew and any other potentially contracting party. The existence of a prior Hough/Loew–Scott

contract may in itself raise the possibility of a further contractual relationship between those parties—indeed, perhaps more of a possibility than would arise had these two parties not contracted before—but, nevertheless, such a possibility, in the absence of any preliminary negotiations or indications of interest by Scott, is too remote to qualify as "prospective." See *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971) (to survive motion to dismiss cause of action for interference with prospective contract, potential consummation of the contract must be "something more than a mere hope"). In short, Hough/Loew had no prospective contract in the works which could be interfered with.[4]

## B.
### *Breach of Fiduciary Duty*

■ Defendants contend that Count III of plaintiff's complaint, which asserts a cause of action for "breach of fiduciary duty," fails to state a cognizable claim because it contains no allegations to the effect that plaintiff

had reposed faith or trust in the defendants nor does it allege that the defendants accepted the fiduciary relationship. Indeed, a fair reading of plaintiff's Complaint discloses that the parties maintained a buyer/seller relationship and that neither party exercised the domination and influence over the other such that would give use to the creation of a fiduciary duty.

Defendant's memorandum at 16. Defendants further contend that Count III fails to allege a sufficient basis for an award of punitive damages, as prayed for by the plaintiff.

I cannot conclude at this stage in the proceedings that plaintiff can present no set of facts to establish that a fiduciary relationship existed between the parties. Plaintiff's complaint alleges that

---

**4.** In its brief, plaintiff relies on *S.N.T. Industries, Inc. v. Geanopulos,* 363 Pa.Super. 97, 525 A.2d 736 (1987), as support for the proposition that interference with prospective contractual relations occurs where one co-venturer surreptitiously maneuvers to consummate a deal with a

third-party that excludes the other co-venturer. However, in that case, both co-venturers had commenced negotiations with a third-party. In other words, there, unlike here, the excluded party could claim preliminary involvement in a prospective contract. See 525 A.2d at 738.

[b]y virtue of the Agreement between CLX and Hough/Loew, CLX and Fowler owed to Hough/Loew a fiduciary obligation to act in Hough/Loew's best interests, with the utmost loyalty, undivided fidelity and fair dealing. ¶ 30.[5]

Such an allegation is sufficient to maintain the cause of action, despite defendants' concerns. Fiduciary relationships have been found to exist in a variety of contractual frameworks; and the question of whether or not they exist often turns on facts and relevant context. Here, the results of discovery have yet to be shown to the court. I cannot dismiss this cause of action on the bare pleadings.

■ Although the standard for awarding punitive damages is high, in that the plaintiff must show wilful, intentional, and malicious conduct on the part of the defendants, see *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 607 F.Supp. 361 (E.D.Pa.1985), here again I cannot conclude on the complaint standing alone that plaintiff can prove no set of facts in support of such an award. Accord *Garden State Tire Realty Corp. v. Hess Associates*, 762 F.Supp. 92 (E.D.Pa.1990).

### C.

#### *Negligent Misrepresentation*

■ Defendants contend that Count IV of plaintiff's complaint does not state a cause of action for "negligent misrepresentation" with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Although Count IV of plaintiff's complaint is stated in summary fashion, introducing no new factual allegations but incorporating by reference those recited earlier in the complaint, the complaint—taken as a whole and construed in a light most favorable to the plaintiff—does state with sufficient specificity a cause of action for negligent misrepresentation. In its brief, plaintiff summarizes the allegations underlying this cause of action as follows:

Defendants represented to plaintiff that it would be the exclusive manager and developer of the Property. (Complaint at ¶ 9). Defendants represented to Hough/Loew that it would receive additional compensation from individual purchasers of the lots by including in any sales agreement a provision that would allow Hough/Loew to obtain the building construction contract from the individual automobile dealerships or businesses. (Complaint at ¶ 15). Hough/Loew relied on these representations and developed a complete architectural design for the building to be developed on and for the area surrounding the subdivided lots. (Complaint at ¶ 16). Hough/Loew developed and sold five of the seven subdivided lots. (Complaint at ¶ 18). Hough/Loew constructed buildings and improvements on the subdivided lots. (Complaint at ¶ 20–21). Contrary to their representations, CLX and Fowler then sold Lot No. 5 without any involvement or participation of Hough/Loew. The actions of CLX and Fowler have deprived Hough/Loew of its ability to develop the property in accordance with its completed architectural design and development plan and caused Hough/Loew to lose profits from the construction contract or other compensation to be paid by buyers of the property to Hough/Loew. (Complaint at ¶ 33).

Plaintiff's memorandum at 28. Such allegations are sufficient to put defendants on notice and to survive a challenge under Rule 9(b).

### D.

#### *Negligent Breach of Contract*

■ Finally, defendants contend that Count V of plaintiff's complaint fails to state a cause of action for "negligent breach of contract." They submit that the allegations recited in the complaint sound mainly in contract, not in tort, and that a cause of action for negligence should not be recognized where "the gist of the action" is contractual. Defendants' memorandum at 18.

---

**5.** See also ¶¶ 43–46.

Plaintiff responds that Pennsylvania courts will recognize an action in tort where there is an "improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance)." See *Raab v. Keystone Insurance Co.*, 271 Pa.Super. 185, 412 A.2d 638 (1979). In this regard, plaintiff relies on *Hirsch v. Mount Carmel District Industrial Fund, Inc.*, 363 Pa.Super. 433, 526 A.2d 422 (Pa.Super.1987). There, the Pennsylvania Superior Court upheld a cause of action for negligent breach of a financing agreement because the complaint recited allegations of improper performance as opposed to nonperformance; the gravamen of the complaint was that, although the defendant eventually succeeded in arranging financing on behalf of the plaintiffs, it failed to do so in an expeditious manner.

The gravamen of the present complaint, however, is not that defendants failed in the course of attempting to comply with their contractual obligations. Instead, the basic thesis is that defendants did not undertake to comply with their contractual obligations—at least with regard to Subdivided Lot No. 5. The claim is not one for misfeasance. Count V must be dismissed.

### IV.

For the foregoing reasons, I conclude that this court has jurisdiction to consider plaintiff's complaint against defendant Fowler. I also conclude that Counts I (tortious interference with prospective contractual relations) and V (negligent breach of contract) of plaintiff's complaint fail to state causes of action and must therefore be dismissed. Finally, I conclude that Counts III (breach of fiduciary duty) and IV (negligent misrepresentation) of plaintiff's complaint do not fail to state causes of action and therefore withstand defendants' motion to dismiss.