**Lloyd Z. REMICK, Esq.**

v.

**Angel MANFREDY, John Manfredy, Jeffrey H. Brown, Esq., Kathleen H. Klaus, Esq. and D'Ancona & Pflaum**

No. Civ.A. 99–CV–0025.

United States District Court,
E.D. Pennsylvania.

April 22, 1999.

Richard G. Phillips, Patrick C. Campbell, Jr., Robert J. Opalka, Richard G. Phillips Associates, Philadelphia, PA, for plaintiff.

Kenneth I. Trujillo, Louis C. Ricciardi, Trujillo Rodriguez & Richards, The Penthouse, Philadelphia, PA, Peter Petrakis, Lisa L. Marré, D'Ancona & Pflaum, LLC, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendants have moved to dismiss this action for lack of *in personam* jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(2) and (6). Alternatively, they argue that venue in this district is improper and request that this matter be transferred to the Northern District of Illinois.

### History of the Case

The plaintiff, Lloyd Remick, is an attorney licensed to practice law in the Commonwealth of Pennsylvania with "a national practice specializing in sports and entertainment law." (Pl's Complaint, ¶ 13). Plaintiff contends that in the late fall of 1996, he and his colleague, Bernard Resnick, Esquire, were approached by Defendant Angel Manfredy, a lightweight boxer, and his advisers, defendants John

Manfredy and Jeffrey Brown, about representing him, particularly with regard to negotiations with Cedric Kushner Promotions, Ltd. "After discussions and negotiations between Remick..., Resnick and Manfredy's team, on January 11, 1997, Angel Manfredy retained Remick to act as his special counsel in order to procure, negotiate and draft boxing and endorsement agreements." (Pl's Compl., ¶ 17). Pursuant to the fee agreement which Angel Manfredy signed, plaintiff was to receive 5% of up to $35,000 of the purse paid to Manfredy for the first bout fought after the signing of the agreement, 8% of the net amount of all purses or other compensation which Manfredy received for boxing or promotions during the term of the agreement and 15% of the gross amount which Manfredy received from any endorsement contract which the plaintiff procured for him.

Plaintiff alleges that almost immediately after he was retained, he began obtaining fight engagements for Angel Manfredy with better, more famous fighters and larger purses than those Manfredy had previously been receiving as well as lucrative promotions contracts. Manfredy and his team, however, demanded a $500,000 purse for an HBO-televised fight with Azumah Nelson which, according to the plaintiff's complaint, was unrealistic given that HBO had budgeted only $850,000 to pay both fighters' purses and all other costs and expenses. As HBO's final and best offer to Manfredy was a purse of $350,000, on March 2, 1998 Manfredy sent Remick a letter terminating his representation on the grounds that Remick had failed to represent his interests and live up to certain promises and was an ineffective negotiator and attorney.

After plaintiff's termination, the Manfredy team negotiated with Cedric Kushner Promotions for a fight with a purse of $75,000 with Isander Lacen to take place on June 16, 1998. On June 12, 1998, plaintiff sent Kushner Promotions a letter requesting that it place 8% of Manfredy's purse into escrow for him until such time as the dispute between Remick and Manfredy could be resolved. No monies were placed into escrow and on September 2, 1998, plaintiff wrote to Angel Manfredy and demanded that his 8% fee for the Lacen fight be paid to him. On September 11, 1998, Defendant Kathleen Klaus, an attorney with the defendant law firm D'Ancona & Pflaum sent plaintiff a letter in response to his threat of legal action against her client, Angel Manfredy. According to the plaintiff's complaint, in this letter, a copy of which was sent to Angel Manfredy, Klaus accused him of attempting to extort money out of the Manfredy team and of having committed professional malpractice, thereby defaming him.

By way of their motion to dismiss and/or to transfer, Defendants, all of whom are residents of the State of Illinois with the exception of Angel Manfredy who is an Indiana resident, assert that they do not have the requisite minimum contacts with Pennsylvania such as would permit this Court to exercise jurisdiction over them. Not surprisingly, Plaintiff argues that there is a sufficient basis for jurisdiction in this forum given that Angel Manfredy and D'Ancona & Pflaum advertise and otherwise conduct business in this Commonwealth via their Internet web pages.

### Standards Applicable to 12(b)(2) Motions

Inasmuch as lack of personal jurisdiction is a waivable defense under Fed. R.Civ.P. 12(h)(1), it is incumbent upon the defendant to challenge it by filing a motion to dismiss under Rule 12(b)(2). *See, e.g.: Clark v. Matsushita Electric Industrial Co., Ltd.,* 811 F.Supp. 1061, 1064 (M.D.Pa. 1993). Once done, the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1121 (W.D.Pa.1997). The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." *Id.,* quoting

*Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3rd Cir.1992) and *Carteret Savings Bank. F.A. v. Shushan,* 954 F.2d 141, 146 (3rd Cir.1992).

■ A Rule 12(b)(2) motion is inherently a matter which requires resolution of factual issues outside the pleadings. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. *Weber v. Jolly Hotels,* 977 F.Supp. 327, 331 (D.N.J.1997) citing, *inter alia, Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67, n. 9 (3rd Cir.1984). At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, the plaintiff must respond with actual proofs, not mere allegations. *Id.*

### Discussion

■ Under Fed.R.Civ.P. 4(e), a district court is permitted to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state where the district court sits. *Time Share Vacation Club,* 735 F.2d at 63. In Pennsylvania, the long-arm statute extends jurisdiction to the "fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Santana Products, Inc. v. Bobrick Washroom Equipment,* 14 F.Supp.2d 710, 713 (M.D.Pa.1998); 42 Pa.C.S. § 5322(b). In other words, the reach of jurisdiction under Pennsylvania law is coextensive with the Due Process Clause of the United States Constitution. *Id.*

"The constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in or purposely directed its activities toward residents of the forum state." *Asahi Met-al Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ There are two theories under which a defendant may be subject to personal jurisdiction. If the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court there, that defendant may be subject to the state's jurisdiction under the concept of "specific jurisdiction." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Santana Products, Inc., supra,* at 713; *Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494, 497 (M.D.Pa.1992). "General jurisdiction" exists when the plaintiff's cause of action arises from the defendant's non-forum related activities. To establish general jurisdiction, the plaintiff must show that the defendant has maintained continuous and systematic contacts with the forum. *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products, Co.,* 75 F.3d 147, 151 (3rd Cir.1996); *National Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 461 (E.D.Pa.1998).

Plaintiff here contends that this Court has *both* general and specific personal jurisdiction over each of the defendants because both Angel Manfredy and D'Ancona & Pflaum solicit business in Pennsylvania through their Internet web sites and because in retaining plaintiff to represent him, Angel Manfredy consciously chose to conduct business with a Pennsylvania resident.

It is indisputable that in very recent years the Internet has drastically changed the way the world does business—it is now possible to conduct business and to provide information and products to consumers

and other businesses entirely from a desktop computer. *See, e.g.: American Civil Liberties Union v. Reno,* 929 F.Supp. 824, 830–848 (E.D.Pa.1996). Although there is scant authority on the subject of whether offering Internet access will confer personal jurisdiction over an individual or entity in a given state, we recently had occasion to address this issue in *Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636 (E.D.Pa.1998) and we believe our summary of the law of the area there is equally applicable in this action:

In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manufacturing Co. v. Zippo Dot Com., Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Three types of contacts have been identified in order to determine the existence of personal jurisdiction. *Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J.1997). The first type of contact is when the defendant clearly does business over the Internet. *Id.* "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo,* 952 F.Supp. at 1124 (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Zippo,* at 1124 (citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)); *Weber,* 977 F.Supp. at 333. The third type of contact involves the posting of information or advertisements on an Internet Web Site which is accessible to users in foreign jurisdictions. *Zippo,* 952

F.Supp. at 1124; see *Weber,* 977 F.Supp. at 333; *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). Personal jurisdiction is not exercised for this type of contact because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, world wide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with personal jurisdiction case law ..." *Weber,* 977 F.Supp. at 333 (quoting *Hearst Corp. v. Goldberger,* 1997 WL 97097, at *1 (S.D.N.Y.1997)).

999 F.Supp. at 638–639.

In this case, it is clear from the face of the plaintiff's complaint that all of the defendants with the exception of Angel Manfredy are residents of the State of Illinois. Angel Manfredy is an Indiana resident. Defendants Angel Manfredy, John Manfredy and Jeffrey Brown have provided affidavits attesting that they do not own property and do not conduct business in Pennsylvania, save for their telephonic or written contacts with Messrs. Resnick and Remick which were all made or originated from Illinois. Their only physical contacts with Pennsylvania have come in the course of traveling to and from other locations and on personal matters.

Defendant Kathleen Klaus similarly attested that she does not own property and does not regularly conduct business in Pennsylvania. She was, however, admitted to practice before this Court *Pro Hac Vice* for one, unrelated case several years ago and attended a deposition in Philadelphia in another unrelated matter in 1996. Her only contact with Mr. Remick in this case appears to have occurred on September 11, 1998 when she wrote him a letter on behalf of Angel Manfredy in response to Plaintiff's threat to bring legal proceedings against her client for breach of the fee letter.

Finally, according to the affidavit of the managing partner of the law firm defen-

dant, D'Ancona & Pflaum is a general practice firm comprised of 100 attorneys, all of whom work in the Chicago office and are residents of Illinois. The firm does not have a Pennsylvania office or affiliate, although it does have records of having a total of 54 past and present clients in the Commonwealth of Pennsylvania.

In addition, both Angel Manfredy and D'Ancona & Pflaum maintain Internet web sites which may be accessed by typing in the addresses "www.eldiabloboxing.com" and "www.dancona.com," respectively. Through his web site, Angel Manfredy provides information regarding his personal history and activities and his history and record as a professional boxer, any upcoming fights, photographs and information on what it takes to become a successful boxer. Through this site, Manfredy offers photographs and other memorabilia, fan club memberships, and various types of merchandise such as "El Diablo" t-shirts and baseball caps for sale. According to John Manfredy, who is Angel Manfredy's manager and the creator of the web page, while order forms for merchandise may be downloaded from the web site, merchandise orders are only taken through the mail and there have been no sales of merchandise or fan club memberships to anyone in Pennsylvania to date.

D'Ancona & Pflaum's web page, in turn, is similar in that it offers information concerning the firm's attorneys, practice areas and specialties, and the firm's speaker's bureau. While it may offer slightly more information, the information and data offered over this web site essentially mirrors that which is provided in the Martindale–Hubbel Legal Directory.

■ In comparing the web sites at issue in this case with the three types of sites which were reviewed in *Walker, Web-*

er and *Zippo*, all *supra*, we find that the Defendants' web sites are "passive" in nature in that there is no evidence that they are interactive or offer anything other than general information and advertising. Advertising on the Internet has been held to fall under the same rubric as advertising in a national magazine and it is well settled law in this Circuit that advertising in a national publication does not constitute the 'continuous and substantial contacts with the forum state' required to give rise to a finding of general jurisdiction. *See: Weber,* 977 F.Supp. at 333, citing *Gehling v. St. George's School of Medicine,* 773 F.2d 539, 542 (3rd Cir.1985) and *Hearst Corp. v. Goldberger, supra,* 1997 WL 97097 at *10. Accordingly, we reject the plaintiff's claim that this Court has general personal jurisdiction with respect to Angel Manfredy, John Manfredy, or Kathleen Klaus [1] or Jeffrey Brown.

■ We likewise reject the plaintiff's contention that specific personal jurisdiction over the defendants may be found here by virtue of the fee agreement which he had with Angel Manfredy. In this regard, the plaintiff claims that since Manfredy asked that plaintiff represent him, Manfredy targeted Pennsylvania and it was therefore foreseeable that any "effects" of Manfredy's breach of the fee agreement would be felt in Pennsylvania. We disagree.

■ In the absence of any contacts with Pennsylvania, the fact that harm is felt in Pennsylvania from conduct occurring outside the state is not sufficient to satisfy due process unless the defendant targets Pennsylvania through the tortious conduct. *Santana Products, supra,* at 715, citing *inter alia, Surgical Laser Techs. v. C.R. Bard, Inc.,* 921 F.Supp. 281, 285 (E.D.Pa.1996), *Supra Medical Corp. v.*

---

[1]. Although there is evidence that Ms. Klaus had two limited prior contacts in the Commonwealth of Pennsylvania when she participated in a deposition in Philadelphia and was admitted to practice *Pro Hac Vice* before this Court in an unrelated matter, there is no evidence that these contacts are or were continuous, substantial, or ongoing. Indeed, there is no evidence that Ms. Klaus has had any contacts at all with Pennsylvania since 1996.

*McGonigle*, 955 F.Supp. 374, 382 (E.D.Pa. 1997). Here, accepting as true Plaintiff's contention that it was Manfredy who contacted him, the fee agreement nevertheless called for **Remick** to provide services to Manfredy, who resides in Indiana. By his own pleading, Plaintiff avers that he has a "national practice specializing in sports and entertainment law," through which **he** presumably targets and conducts business on behalf of out-of-state residents and on the soil of states other than Pennsylvania. (Complaint, ¶ 13).

Moreover, there is no evidence that any of the fights which Remick purportedly secured for Manfredy were to take place in Pennsylvania, or that Manfredy executed the fee agreement or any endorsement, promotional or fight agreements in Pennsylvania. Mr. Manfredy's affidavit reflects that the only time he has been in Pennsylvania was to deplane at the Philadelphia airport *en route* to Atlantic City, NJ. In short, there is no evidence to suggest that Angel Manfredy in any way directed his activities toward the Commonwealth of Pennsylvania, other than retaining an attorney whose office is located in Philadelphia and who is a member of the Pennsylvania Bar. We do not find this sole contact between Mr. Manfredy and Mr. Remick to be sufficient to confer specific jurisdiction on this Court. *See: Vetrotex Certainteed Corp. v. Consolidated Fiber Glass*, 75 F.3d 147, 151, 152 (3rd Cir.1996) (single agreement, standing alone, is an insufficient ground upon which to exercise specific

personal jurisdiction, nor do informational communications in furtherance of a contract between a resident and a non resident establish the purposeful activity necessary for a valid assertion of personal jurisdiction over non-resident defendant). Accordingly, the Defendants' motion to dismiss for lack of *in personam* jurisdiction is granted with respect to Angel Manfredy, John Manfredy, Kathleen Klaus and Jeffrey Brown.

As regards the law firm defendant, given its admission that it has records of having serviced 54 clients in Pennsylvania, some of which are present clients, we conclude that sufficient evidence exists that it has purposefully availed itself of the privilege of conducting activities within this state to justify the exercise of general personal jurisdiction over it. However, Plaintiff's complaint shall be dismissed as against this defendant as well pursuant to Fed.R.Civ.P. 12(b)(6).[2]

Plaintiff's claims against D'Ancona & Pflaum are asserted in Counts I, II, III and VI under the state law theories of defamation, civil conspiracy and tortious interference with contractual relations and seek to hold the law firm vicariously liable for the actions of its employees, Brown and Klaus.

To plead a cause of action for defamation in Pennsylvania, a plaintiff

---

2. It has long been held that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the courts are to primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most

favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir. 1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988); *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3rd Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

must plead and prove each of the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

*Furillo v. Dana Corporation Parish Division,* 866 F.Supp. 842, 847 (E.D.Pa.1994), citing 42 Pa.C.S. § 8343, *Elia v. Erie Insurance Exchange,* 430 Pa.Super. 384, 634 A.2d 657, 659 (1993). Under Pennsylvania defamation law, it is within the trial court's province to make an initial determination whether or not the challenged statements are capable of having a defamatory meaning. *Id.*

■■■■ In Pennsylvania, a defamatory statement is one that "tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922 (3rd Cir.1990) quoting *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 303, 167 A.2d 472 (1960). In determining whether or not a particular communication is defamatory, the court must view the statement in context with an eye toward the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. *Baker v. Lafayette College,* 516 Pa. 291, 296, 532 A.2d 399, 402 (1987); *Corabi v. Curtis Publishing Company,* 441 Pa. 432, 447, 273 A.2d 899, 907 (1971). Opinion, without more, does not create a cause of action in libel; instead, the allegedly libeled party must demonstrate that

the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. *Baker,* 516 Pa. at 296–297, 532 A.2d at 402.

■■■ In this case, Plaintiff is basing his defamation claim against the law firm defendant on Attorney Klaus' September 11, 1998 letter to plaintiff reiterating that since Angel Manfredy had terminated plaintiff's engagement on March 2, 1998, any further efforts by plaintiff to "extort" money from Cedric Kushner Productions or anyone else on the basis of the fee agreement would result in the institution of a lawsuit by Manfredy against Remick for damages arising from Remick's failure to adequately represent Manfredy. Reading this letter in the context of responding to plaintiff's threat of legal proceedings against a firm client and even giving plaintiff the benefit of the doubt that it was published to other, third parties, we cannot find it to be anything other than an expression of opinion and dissatisfaction with Mr. Remick's performance on Mr. Manfredy's behalf. While we can understand that Mr. Remick may have found the letter to be personally insulting, we do not find it to be defamatory. Thus, plaintiff's defamation claim against D'Ancona & Pflaum is dismissed with prejudice.

We reach a similar conclusion with respect to the plaintiff's claim for interference with business and contractual relationships and civil conspiracy. Again, the plaintiff seeks to hold the law firm vicariously liable for the alleged actions of its associate attorney, Jeffrey Brown who purportedly conspired with John Manfredy "to wrongfully terminate Remick's representation" and "intended to interfere and cause harm to the contract and future economic relationships that Remick had with Angel Manfredy by, among other things, setting Remick up to fail in the negotiations over the Azumah Nelson fight and by publishing and disseminating false and defamatory information about Rem-

ick's skill and ability." (Pl's Complaint, ¶69).

Pennsylvania has adopted the Restatement (Second) of Torts § 766 (1979) version of tortious interference with contract while recognizing two distinct branches of the tort: one concerning existing contractual rights and another regarding prospective contractual relations. Under the Restatement, "one who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." *U.S. Healthcare v. Blue Cross*, 898 F.2d at 924–925; *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 431, 393 A.2d 1175 (1978), cert. denied, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979).

With respect to prospective contractual relations, the following elements must be demonstrated: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Id.*

The tort of civil conspiracy, in turn, is defined under the law of Pennsylvania as the combination of two or more persons to do an unlawful act or to do an otherwise lawful act by unlawful means. *Pierce v. Montgomery County Opportunity Board*, 884 F.Supp. 965 (E.D.Pa.1995). Malice, i.e., an intent to injure, and lack of justification are essential elements to a civil conspiracy cause of action. *Barmasters Bartending School, Inc. v. Authentic Bartending School*, 931 F.Supp. 377 (E.D.Pa.1996).

Here, Plaintiff alleges only that John Manfredy and Jeffrey Brown intended to and did interfere and cause harm to Remick's contract with Angel Manfredy by "setting [him] up to fail in the negotiations over the Azumah Nelson fight and by conspiring with John Manfredy to wrongfully terminate his representation of Angel Manfredy by, *inter alia*, publishing false and defamatory information about Remick's skill and competence." Given that under Fed.R.Civ.P. 8(a), a complaint must outline all of the elements of the claim and is subject to dismissal if the pleading fails to reasonably inform the adverse party of the asserted cause of action, we find Mr. Remick's complaint to be deficient by virtue of its failure to advise the defendant of how its employee allegedly "set up" the plaintiff to fail in fight negotiations and what false and defamatory information he is accused of disseminating and to whom. *See, Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Delgado v. Federal Bureau of Prisons*, 727 F.Supp. 24 (D.D.C.1989). *See Also: Hides v. CertainTeed Corp.*, 1995 WL 458786 (E.D.Pa. 1995). Accordingly, Counts II, III and VI of the complaint shall be dismissed as against D'Ancona & Pflaum also, albeit with leave given to plaintiff to re-plead his tortious interference with contract and civil conspiracy claims.[3]

An order follows.

## ORDER

AND NOW, this 22nd day of April, 1999, upon consideration of the Defendants' Motion to Dismiss Plaintiff's Complaint and

---

**3.** In so holding, this Court strongly suggests that plaintiff carefully examine the facts underlying his case in deciding whether and where to re-file it. While we note that the possibility exists that plaintiff may be able to plead claims for conspiracy and tortious interference with contract and that venue may technically lie in this district pursuant to 28 U.S.C. § 1391(a) as against the law firm defendant, the interests of judicial economy and convenience may very well be better served by bringing any remaining viable claims against this defendant in the same forum as the other defendants named here.

Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and the Plaintiff's Complaint is DISMISSED without prejudice in accordance with and for the reasons set forth in the preceding Memorandum Opinion.