## Musselman v. Davison

C.P. of Bucks County, no. 92-02407-18-2.

*Kevin Sommar,* for plaintiffs.
*Gregory F. Lepore,* for defendants.

McANDREWS, *J.,* April 27, 1999—This matter is before the court on plaintiffs' motion for post-trial relief.

This case arose out of injuries sustained by plaintiff Helena Musselman when she fell on April 26, 1990 at the property she was renting from Laureen Davison and Raymond Bechtel. Musselman, whose foot was in a cast at the time, fell while descending the four carpeted steps in front of the home. Musselman claimed that her foot became wedged in the step, she fell backwards and she hit her head. As a result, she claimed to have suffered from post-traumatic stress syndrome, frequent migraine headaches and loss of memory.

A trial was held on December 7, 8 and 9. The jury returned a verdict in favor of defendants. The jury, in answer to the special interrogatory, found defendants' negligence was not a substantial factor in bringing about the plaintiff's harm.

Plaintiffs filed timely post-trial motions seeking a new trial, alleging that: (1) the verdict was contrary to and against the weight of the evidence; (2) defendants' expert, Dr. Seward, improperly rendered opinions beyond his expertise and qualifications; (3) that the in-

troduction of Helena Musselman's prior use of medication was improper; and (4) that plaintiff was unduly prejudiced when the court reversed its ruling on the motion in limine seeking to exclude evidence of plaintiff's prior medical history and prior and subsequent falls. The court will address each argument in turn.

A new trial should be granted where the verdict is so contrary to the evidence that it "shocks one's sense of justice." *Neison v. Hines,* 539 Pa. 516, 518, 653 A.2d 634, 636 (1995). However, "a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury could have decided in favor of either party." *S.N.T. Industries Inc. v. Geanopulos,* 363 Pa. Super. 97, 105, 525 A.2d 736, 740 (1987). In this case, there was conflicting evidence on exactly how plaintiff fell.

The record discloses that there were four exterior steps which plaintiff was descending. The steps were covered with carpet. The fourth step was rotted underneath the carpet and was soft. Plaintiff contended that she stepped on the soft spot and fell backwards, hitting her head. Musselman's daughter had testified that her mother fell backwards and hit her head on the step. However, her daughter had preceded her down the steps, and did not see what caused the fall. Plaintiff testified at trial that she fell backwards. However, the transcript of prior deposition indicated that she said that she did not know how she fell. Defendants contended that plaintiff's foot was caught under the railing and not in the step. Plaintiff conceded this was possible. The general rule is "a jury is free to believe any part of a witness's testimony that they choose, and may disregard any portion of the testimony that they disbelieve." *Hutchison by Hutchison v. Luddy,* 453 Pa.

Super. 420, 683 A.2d 1254 (1996), *alloc. denied,* 548 Pa. 653, 698 A.2d 67 (1997). Given the conflict in testimony, the jury could have concluded that plaintiff did not fall as a result of the deteriorated step.

Plaintiffs' second argument is that defendants' expert, Dr. Seward, improperly rendered opinions beyond his expertise and qualifications. Dr. Seward was offered and received as an expert in neuropsychology. Additionally, Dr. Seward testified that he works as a psychologist for the State of Delaware's forensic unit. In this capacity, he has contact with people sent for evaluation and treatment, many of whom are substance abusers.

Plaintiff contends that no foundation existed for Dr. Seward's testimony that misutilization of pain medication resulted in her memory impairment and cognitive deficits. Plaintiffs point out that there was no evidence of memory impairment prior to the 1990 incident and that no medical doctor testified that Musselman was addicted to drugs. Therefore, plaintiffs claim when Seward rendered an opinion that Musselman had a drug addiction, he went beyond the scope of his qualifications.

Plaintiffs, however, mischaracterize Seward's testimony. Dr. Seward testified, since he had not seen Musselman clinically, that he did not feel competent to diagnose her. Dr. Seward never stated that Musselman was addicted to drugs. He only opined that her pattern of behavior might warrant further investigation. Also, Seward testified that use of drugs could cause memory loss, not that it specifically did in Musselman's case. Since Dr. Seward did not conclude that Musselman was addicted to drugs, but merely drew his opinions that her behavior may warrant further investigation from the reports and records of other doctors, his testimony did not go beyond the scope of his qualifications.

Additionally, plaintiffs claim that Seward improperly testified to opinions contained within reports and periodicals that were not attributed to him. Plaintiffs' counsel at trial objected to Dr. Seward's testimony in that: (1) he referenced the *Physicians' Desk Reference* which went beyond his report; and (2) that he was improperly asked what was the current trend in the relevant literature.

With respect to the use of the *Physicians' Desk Reference,* defendants properly note that the text is a standard reference relied upon by both physicians and other health care professionals. The text defines the relevant uses of medication, potential side effects, chemical nature and narcotic class of prescription medications. Dr. Seward, in his profession, used such a text to form his opinions. On the matter of referencing current literature, the witness did refer to trends in current neuropsychiatric literature. Dr. Seward, as a physician, would be required to stay informed of material his profession relies upon. The court, therefore, does not believe that Dr. Seward's testimony went beyond the scope of his qualifications.

Third, plaintiffs contend that the introduction of Helena Musselman's prior use of medication was improper. "Generally, a trial judge should admit all relevant evidence unless a specific rule bars its admission." *Valentine v. Acme Markets Inc.,* 455 Pa. Super. 256, 261, 687 A.2d 1157, 1160 (1997). In order to constitute reversible error, "an evidentiary ruling must not only be erroneous, but also harmful to the complaining litigant." *Id.*

The court admitted evidence of plaintiff's prior medication use because it was relevant to the testimony of both plaintiffs' expert, Dr. Gordon, and defendants' expert, Dr. Seward. Dr. Gordon had testified that Mussel-

man was diagnosed as suffering from depression resulting from the fall. Dr. Seward's testimony explained that the use of both narcotic and non-narcotic pain killers can cause a patient to present with symptoms of depression. Therefore, Musselman's use of medication was relevant to show another possible cause for her depression—that the depression could have been caused by the medication rather than her fall.

In regard to plaintiff's past drug use, this was relevant to show an alternate cause for potential memory loss, which plaintiffs contended resulted from the fall. Dr. Seward testified that use of narcotic medications may cause cognitive defects. Again, this information would allow the jury to assess an alternate theory for Musselman's memory loss.

The last issue plaintiffs raise is that plaintiff was unduly prejudiced when the court reversed its ruling on the motion in limine seeking to exclude evidence of plaintiff's prior medical history and prior and subsequent falls. Generally, it cannot be proven that a person committed an act by showing that that person committed a similar act in the past. *Levant v. Leonard Wasserman Co. Inc.,* 445 Pa. 380, 382-83, 284 A.2d 794, 796 (1971). However, testimony of prior falls is admissible where "the injuries from that alleged accident [can] be connected to those claimed in the present suit, so as to raise the inference of a pre-existing condition." *Valentine v. Acme Markets Inc.,* 455 Pa. Super. 256, 261, 687 A.2d 1157, 1160 (1997) (citing *Papa v. Pittsburgh Penn-Center Corp.,* 421 Pa. 228, 218 A.2d 783 (1966)).

While the court initially ruled in favor of plaintiffs to exclude the evidence of plaintiff's prior medical history and prior and subsequent falls, as the trial and

testimony progressed, the court allowed the information in for the limited purpose of establishing the possibility of a pre-existing condition. Plaintiff had fallen or been injured on a number of occasions prior to her fall on the steps in 1990. Plaintiff fell in 1978, was in a car accident in 1980, fell down a set of stairs in 1982, and was in a second car accident in 1986. She suffered a concussion in the 1982 fall. Subsequent to her car accidents, plaintiff had suffered from migraines. These prior falls and accidents would go to establishing that her migraines and memory loss were prior existing conditions. Therefore, the prior falls and injuries were properly admitted for that purpose.

Plaintiff was also asked about three injuries subsequent to her 1990 fall, which plaintiffs contend should not have been admitted. One of the subsequent falls had been brought into evidence previously by plaintiffs' expert, Dr. Ruth, during direct examination. Further, plaintiffs did not object to this testimony and failed to object on a second occasion as well. On a third occasion, plaintiffs did object and the evidence was excluded. The subsequent falls were, therefore, admitted into evidence by either the plaintiff, or by plaintiffs' failure to object to the testimony.

For the foregoing reasons, plaintiffs' motion for post-trial relief in the form of a new trial is denied.

## ORDER

And now, April 27, 1999, it is ordered and directed that plaintiffs' motion for post-trial relief be and is hereby denied.